IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL P., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1464-BK |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION**

The parties have consented to proceed before the magistrate judge. Doc. 19. Pending before the Court are the parties' cross-motions for summary judgment. Doc. 21; Doc. 23. After careful consideration of the parties' motions and for the reasons stated herein, Plaintiff's *Motion for Summary Judgment*, Doc. 21, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 23, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**

   **A.  Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his application for supplemental security income under the Social Security Act ("the Act"). Doc. 1 at 1. Plaintiff filed for benefits in October 2013, claiming that he became disabled in October 2008 due to a left knee injury and problems following surgery, high cholesterol, a congenitally shortened right arm, and left arm spasms. Doc. 17-4 at 2. Plaintiff's claims were denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. §405(g). Doc. 17-3 at 2, 15; Doc. 17-4 at 30; Doc. 17-5 at 3.

### B. Factual Background

Plaintiff was 46 years old on his alleged disability onset date and has been unemployed since August 2004. Doc. 17-4 at 2; Doc. 17-7 at 6. He completed the eleventh grade and worked in maintenance and as a manual laborer for over 20 years. Doc. 17-7 at 7.

In terms of his relevant medical history, the evidence of record reflects that Plaintiff injured his leg by falling through a roof in 1989 and underwent two surgical procedures on his knee as a result. Doc. 17-10 at 34. He continues to have left knee pain but can sit, stand, and move about without difficulty. Doc. 17-10 at 36. Additionally, Plaintiff has a congenitally short right arm. Doc. 17-10 at 30. He occasionally has a reduced range of motion in his right shoulder and, as a result, has trouble lifting and carrying objects. Doc. 17-9 at 4; Doc. 17-10 at 36. Nevertheless, throughout the relevant timeframe, treatment notes indicate that Plaintiff continued to perform tasks after his alleged onset disability date which required upper body strength, such as mowing a large yard, performing home repair for clients and himself, woodworking, laying carpet and tile, and performing all his activities of daily living except driving, due to his license being suspended. Doc. 17-7 at 41; Doc. 17-8 at 41; Doc. 17-10 at 39; Doc. 17-11 at 2.

On examination, Plaintiff had full strength, good grip and coordination, the ability to reach, handle, finger, and feel, and no spasms, atrophy, or edema. Doc. 17-10 at 36. Plaintiff only infrequently complained of upper extremity symptoms, and often had unremarkable physical examinations throughout 2014 and 2015. Doc. 17-9 at 25; Doc. 17-10 at 12, 35; Doc. 17-11 at 6-8, 11, 16, 26, 32. In July 2014, an examining physician found that Plaintiff had: (1) 5/5 strength; (2) no spasms, atrophy, or edema; (3) good grip strength and coordination; and (4) the ability to reach, handle, finger, and feel. Doc. 17-10 at 36. A physical exam showed

tenderness and a moderately reduced range of motion in both shoulders. Doc. 17-9 at 4. The record also reflects that Plaintiff is morbidly obese. Doc. 17-9 at 2.

Plaintiff was found to be in the low-average-to-borderline range of intellectual functioning, and although the state consultants opined that he had moderate difficulty in concentration, persistence and pace, they also concluded that he could (1) understand, remember, and carry out detailed but not complex instructions; (2) make decisions; (3) accept instructions; and (4) respond appropriately to changes in a routine work setting. Doc. 17-4 at 11-12, 23; Doc. 17-8 at 36.

### C. The ALJ's Findings

The Administrative Law Judge ("ALJ") found that Plaintiff has the severe impairments of degenerative joint disease of the left knee, obesity, a congenitally shorter right arm, and a personality disorder, but did not have an impairment or combination of impairments that met or medically equaled a listed impairment for presumptive disability under the Code of Federal Regulations ("Regulations"). Doc. 17-3 at 20, 22. The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work as defined in the Regulations, stand/walk/sit for six hours in an eight-hour workday, and occasionally climb, kneel, crouch, crawl, and reach overhead with the upper right extremity. Doc. 17-3 at 24. The ALJ limited Plaintiff's use of the right upper extremity to acting as a helper for the left, dominant upper extremity. Doc. 17-3 at 24.

In terms of Plaintiff's mental abilities, the ALJ ruled that he could (1) understand, remember, and carry out detailed but not complex instructions; (2) make basic decisions; (3) attend and concentrate for extended periods of time; (4) accept instructions; (5) frequently interact with coworkers, supervisors, and the public; and (6) respond to changes in a routine

3

work setting. Doc. 17-3 at 24. The ALJ concluded that while Plaintiff could not perform any of his past relevant work, he could perform other jobs available in the national economy. Doc. 17-3 at 29-30.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

### III. DISCUSSION

#### A. Plaintiff's Bilateral Shoulder and Intellectual Functioning Impairments

Plaintiff first contends that the ALJ erred in finding his bilateral shoulder and intellectual function impairments non-severe and non-medically determinable, and then not considering

those impairments alone and in combination with his other impairments when formulating the RFC.[1] Doc. 21-1 at 10-15.

Defendant counters that the ALJ did not commit harmful error in finding that those impairments are not severe. Doc. 23-1 at 7. First, Defendant points out that the ALJ addressed Plaintiff's complaints of bilateral shoulder pain, weakness, and numbness but further noted that Plaintiff (1) continued to perform tasks after his alleged onset disability date which required upper body strength; (2) infrequently complained about his shoulders; (3) had numerous unremarkable physical exams; and (4) was found to have good strength and agility. Doc. 23-1 at 7-8. Defendant also contends that the ALJ explicitly considered Plaintiff's shoulder impairment at the subsequent steps of the sequential evaluation process. Doc. 23-1 at 8. In terms of Plaintiff's intellectual functioning, Defendant argues that the ALJ did consider that impairment in the RFC assessment and compensated for it by limiting Plaintiff to making only basic decisions and performing detailed, but not complex, instructions. Doc. 23-1 at 10.

An ALJ must consider the combined effect of all impairments when determining whether an impairment is severe. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citation omitted). A severe impairment is "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." *Jones v. Astrue*, 821 F. Supp.2d 842, 849 (N.D. Tex. 2011) (Toliver, J.) (citing 20 C.F.R. § 416.920(c)). The Court of Appeals for the Fifth Circuit has construed this standard to mean that an impairment is not severe

---

[1] Plaintiff also asserts that the ALJ failed to fully develop the evidence relating to his shoulder and intellectual impairments. Doc. 21-1 at 11, 14-15, 18. Although Plaintiff did not sufficiently brief that argument, the Court finds the record to be amply developed with respect to these two impairments.

6

"only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

### *1. Shoulder Pain*

As an initial matter, the ALJ properly acknowledged Plaintiff's bilateral shoulder pain before finding it to be non-severe. *See, e.g.*, Doc. 17-3 at 21 (ALJ expressly noting Plaintiff's "alleged bilateral shoulder pain" and "weakness, pain, and numbness in his upper extremities to the point that he has difficulty caring for his personal needs."); *see also* Doc. 17-3 at 21 (noting that "physical examinations have identified . . . bilateral shoulder tenderness, pain, and moderately reduced range of motion"). Further, substantial evidence supports the ALJ's finding that Plaintiff's shoulder impairment is not severe for the reasons Defendant asserts in her motion.

Even if the ALJ's decision to find Plaintiff's shoulder impairment not severe was erroneous, any error was harmless because the ALJ explicitly considered the impairment in formulating Plaintiff's RFC. As a result, the ALJ limited Plaintiff to medium work that involved only occasional overhead reaching with the right upper extremity, limiting it to act as a helper for the left, dominant upper extremity. Doc 17-3 at 24. Further, the ALJ clearly stated that she considered the entire record, including all of Plaintiff's symptoms and the extent to which they were consistent with the objective medical and other evidence. Doc 17-3 at 24. Such express statements must be taken as true, not as generic, meaningless statements. *See, e.g.*, *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (noting that the ALJ's decision states expressly that it was made "[a]fter careful consideration of all the evidence," and there was no reason or evidence to dispute that assertion). Thus, Defendant is entitled to summary judgment on this ground.

7

### *2. Intellectual Functioning*

The ALJ also properly considered Plaintiff's intellectual functioning impairment and did not err in determining that the impairment is not severe. The ALJ noted that Plaintiff had "difficulty with literacy, specifically reading, writing, and an inability to balance a checkbook." Doc. 17-3 at 22. She also considered a November 2014 function report in which Plaintiff "admitted that he could handle his finances, including using a checkbook and money orders." Doc. 17-3 at 22. In addition, the ALJ observed that Plaintiff reported receiving special education services in elementary school but dropped out of high school due to "non-academic factors." Doc. 17-3 at 22; *see also* Doc. 17-4 at 22-23. Finally, the ALJ considered that Plaintiff "has not been definitively diagnosed with a learning disability or other related mental impairment." *See* Doc. 17-3 at 22 (medical records demonstrate that Plaintiff appeared to function in a "low-average-to-borderline range of intellectual functioning."); Doc. 17-4 at 6 (consultative report estimating Plaintiff's intelligence to be average with satisfactory memory and recall abilities).

Again, even assuming error, it is not reversible because the ALJ properly considered Plaintiff's intellectual functioning impairment in formulating his RFC. *See* Doc. 17-3 at 22, 27-28 (discussion of consultative examination and the state agency medical consultants' opinions); *see generally Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (noting that "[b]elow-average intelligence alone does not constitute a severe mental impairment."). Based upon these considerations, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, and pace and limited him to making only basic decisions and performing detailed, but not complex, instructions. Doc. 17-3 at 24.

8

## B. RFC Determination

Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence because the record reflects that he cannot perform the demands of medium work, including lifting, carrying, sitting, standing, walking, bending, and stooping on a sustained basis. Doc. 21-1 at 15-17. Relatedly, Plaintiff asserts that the ALJ did not properly accommodate Plaintiff's obesity, knee, and right arm impairments.[2] Doc. 21-1 at 17.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). The RFC is the most a claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether a claimant can work. 20 C.F.R. § 416.920(a)(4). In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of the individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184; 20 C.F.R. § 416.923. Finally, the ALJ must consider a claimant's obesity in combination with his other impairments in assessing his RFC. SSR 02-1p, 2000 WL 628049 (stating that obesity remains a complicating factor for many ailments and is a "medically determinable impairment" to be considered in assessing an individual's RFC).

Plaintiff's claim that the ALJ failed to properly accommodate his left knee impairment is incorrect. Doc. 21-1 at 17. The ALJ noted that Plaintiff had undergone two surgeries on his left knee but had only occasionally sought treatment for knee pain. Doc. 17-3 at 26. The ALJ also

---

[2] Plaintiff also maintains that the ALJ did not properly accommodate his bilateral shoulder pain, but the Court disposed of that argument *supra*.

considered a July 2014 examination that found Plaintiff had a normal gait and could heel walk, stand, and move without difficulty, although he complained of pain while squatting and hopping, and his knee flexion was slightly limited. Doc. 17-3 at 26. The ALJ then accommodated Plaintiff's limitations in the RFC by limiting him to only occasional climbing, kneeling, crouching, and crawling. Doc. 17-3 at 26.

Plaintiff's claim that the ALJ failed to properly accommodate his obesity is also incorrect. The ALJ noted that obesity may cause limitations in exertional abilities, postural functions, and the ability to tolerate extreme hazards. Doc. 17-3 at 26. The ALJ then considered that the combined effects of obesity with other impairments can be greater than the effects of the impairments considered separately. Doc. 17-3 at 26. Lastly, the ALJ accommodated Plaintiff's obesity by limiting him to medium work with "mostly occasional posturals to accommodate his obesity." Doc. 17-3 at 26.

Finally, Plaintiff's claim that the ALJ failed to properly accommodate his right arm impairment is also mistaken. The ALJ noted that Plaintiff's right arm was slightly shorter than his left, and he occasionally had reduced range of motion in his right shoulder. Doc. 17-3 at 26. However, the ALJ noted that the medical records indicated that Plaintiff has 5/5 motor strength and good coordination, motion, grip, as well as the ability to reach, handle, finger, and feel. Doc. 17-3 at 27. As an accommodation, the ALJ limited Plaintiff to only occasional overhead reaching and helper tasks with the right upper extremity. Doc. 17-3 at 27.

### C. Plaintiff's Subjective Complaints

Plaintiff next contends that the ALJ did not adequately evaluate the factors set forth in Social Security Ruling ("SSR") 16-3p, and then violated that rule by using his non-compliance

10

or lack of treatment to discredit his subjective reports of disabling symptoms in violation of SSR 82-59. Doc. 21-1 at 21-22.

In response, Defendant urges that the ALJ adequately evaluated the factors listed in the Regulations. Doc. 23-1 at 19. Defendant also argues that the ALJ's subjective analysis was not improper because the ALJ used the term "credibility" as a reference to the inconsistences between Plaintiff's subjective complaints and the objective evidence in the record and not to "impugn" Plaintiff's character. Doc. 23-1 at 18. Finally, Defendant argues SSR 82-59 does not apply here because the ALJ did not find Plaintiff disabled. Doc. 23-1 at 20-21.

### 1. *Evaluation of Plaintiff's Symptoms Under SSR 16-3p*

SSR 16-3p, which became effective in March 2016, details how an ALJ must evaluate claimant's symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1. As such, when evaluating a claimant's symptoms, the ALJ may not assess the claimant's overall character or truthfulness, but must instead focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and, given the adjudicator's evaluation thereof, whether the intensity and persistence of the symptoms limit the claimant's ability to perform work-related activities. SSR 16-3p, 2016 1119029 at *10.

Upon review, the Court concurs with Defendant that the ALJ complied with the requirements of SSR 16-3p. First, the ALJ did not impugn Plaintiff's credibility. Moreover, the ALJ abided by the restriction of SSR 16-3p when she considered Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms and juxtaposed them against the objective medical and other evidence of record. *See* Doc. 17-3 at 29 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision."); *see also* Doc. 17-3 at 21-22 (finding that Plaintiff testified to experiencing dizziness and "fatigue lasting for an hour daily that requires [him to] lie down," but medical treatment notes indicated those conditions were well controlled with medication); Doc. 17-3 at 21 (observing Plaintiff's "alleged bilateral shoulder pain," such that "he has difficulty caring for his personal needs," but noting Plaintiff's work as a handyman that required upper-body strength and that Plaintiff had previously reported he was able to perform all of his activities of daily living); Doc. 17-3 at 21 (acknowledging Plaintiff's complaints of worsening muscle cramps without physical findings). On this record, there is no basis for reversal. *See Anderson v. Berryhill*, No. 3:16-CV-0853-BK, 2017 WL 3589543, at *5 (N.D. Tex. Aug. 18, 2017) (Toliver, J.). Accordingly, Defendant is entitled to summary judgment on this ground.

### 2. *Application of SSR 82-59*

SSR 82-59 provides that:

> Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment.
>
> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

SSR 82-59, 1982 WL 3134, at *1 (emphasis in original). While the Court of Appeals for the Fifth Circuit has not ruled on the issue, several circuits subscribe to the view that SSR 82-59 only

applies where the Plaintiff is found disabled.[3]  This Court has held the same.  *See Simmons v. Berryhill*, No. 4:17-CV-684-A-BJ, 2018 WL 3900912, (N.D. Tex. July 31, 2018) (Cureton, J.) (citing *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-3126, 2013 WL 632104, at *20 (N.D. Tex. February 4, 2013) (Stickney, M.J.) (finding that typically, SSR 82-59 only applies after a finding that the plaintiff is disabled).

If, however, the ALJ relies "almost exclusively on substance abuse and noncompliance with prescribed treatment to determine Plaintiff's RFC," then the ALJ must adhere to the policy issued in SSR 82-59.  *Compare Lindsey v. Astrue*, No. 3:09-CV-1649-BF, 2011 WL 817173, at *8 (N.D. Tex. March 9, 2011) (Stickney, J.) ("Even though the ALJ did not determine noncompliance or substance abuse after finding Plaintiff disabled at Step 5, the ALJ relied almost exclusively on substance abuse and noncompliance with prescribed treatment to determine Plaintiff's RFC . . . [T]he ALJ cannot circumvent the requirements of SSR 82-59."), *with Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-3126-L-BF, 2013 WL 632104, at *21 (N.D. Tex. Feb. 4, 2013) (Stickney, J.) (distinguishing *Lindsey* and stating "Here . . . [t]he ALJ merely utilized Plaintiff's noncompliance with prescribed treatment as a factor in assessing her credibility").

---

[3] *See, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (" The procedures that SSR 82-59 mandates, however, only apply to claimants who would otherwise be disabled within the meaning of the Act.  As discussed above, Roberts would not otherwise be disabled due to obesity because she failed to meet the duration requirement.  Thus, she had no right to enjoy the protections of SSR 82-59."); *see also Mack v. Comm'r of Soc. Sec.*, No. 10-12325, 2011 WL 989813, at *2 (11th Cir. March 22, 2011) ("While we have not specifically addressed SSR 82-59, the Circuits that have considered the policy statement have held that the procedures mandated in SSR 82-59 'only apply to claimants who would otherwise be disabled within the meaning of the Act.'") (quoting *Roberts*, 66 F.3d at 183).

Here, the ALJ did not find Plaintiff disabled. Consequently, SSR 82-59 only applies if the ALJ relied "almost exclusively" on Plaintiff's noncompliance in finding that he is not disabled. *Lindsey*, 2011 WL 817173, at *8. As in *Johnson*, the ALJ merely noted Plaintiff's noncompliance with prescribed treatment as one of many factors in his analysis. Indeed, as detailed *supra*, the ALJ's findings are supported by objective medical evidence. As such, the ALJ did not improperly discuss Plaintiff's noncompliance with medical treatment in violation of SSR 82-59.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 21, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 23, is **GRANTED**, and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED** on September 24, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE